**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **THE NORTH RIVER INSURANCE COMPANY,** | § § § | |
| **Plaintiff,** | § § | |
| | § | **CIVIL ACTION NO.  3:12-cv-1317** |
| **v.** | § § | |
| **HALO COMPANIES, INC., HALO ASSET MANAGEMENT, LLC, HALO PORTFOLIO ADVISORS, LLC, B. CADE THOMPSON, PAUL WILLIAMS, REIF CHRON, and TONY CHRON,** | § § § § § § § | |
| **Defendants.** | § § | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff The North River Insurance Company ("North River"), files its Complaint for Declaratory Judgment against Halo Companies, Inc., Halo Asset Management, LLC, Halo Portfolio Advisors, LLC (collectively "Halo"), and B. Cade Thompson, Paul Williams, Reif Chron, and Tony Chron (collectively the "Individual Defendants") seeking a declaration of its rights and obligations under the relevant insurance contract.

## I.
## PARTIES

1.    North River is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in Morristown, New Jersey. At all relevant times, North River was authorized to do business in the State of Texas.

2.    Upon information and belief, Halo Companies, Inc. is a Delaware corporation with its principal place of business in Allen, Texas. Because it does business in Texas, but has

not designated a resident agent for service of process, it may be served through the Texas Secretary of State at Citations Unit, Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079, or by serving an officer or director of the corporation at 700 Central Expressway S., Suite 500, Allen, Texas 75013.

3.      Upon information and belief, Halo Asset Management, LLC is a wholly owned subsidiary of Halo Companies, Inc., located in Allen, Texas. Halo Asset Management, LLC may be served through its registered agent, Halo Group, Inc., 700 Central Expressway S., Suite 500, Allen, Texas 75013.

4.      Upon information and belief, Halo Portfolio Advisors, LLC is a wholly owned subsidiary of Halo Companies, Inc., located in Allen, Texas. Halo Asset Management, LLC may be served through its registered agent, Halo Group, Inc., 700 Central Expressway S., Suite 500, Allen, Texas 75013.

5.      Upon information and belief, B. Cade Thompson is Chairman, Chief Executive Officer, and a Director of Halo Companies, Inc. He may be served with process at 700 Central Expressway S., Suite 500, Allen, Texas 75013, or wherever he may be found.

6.      Upon information and belief, Paul Williams is Vice Chairman, Chief Financial Officer, and a Director of Halo Companies, Inc. He may be served with process at 700 Central Expressway S., Suite 500, Allen, Texas 75013, or wherever he may be found.

7.      Upon information and belief, Reif Chron is President of Halo Companies, Inc. He may be served with process at 700 Central Expressway S., Suite 500, Allen, Texas 75013, or wherever he may be found.

8.      Upon information and belief, Tony Chron is a Director of Halo Companies, Inc. He may be served with process at 700 Central Expressway S., Suite 500, Allen, Texas 75013, or wherever he may be found.

## II.
## JURISDICTION

9.      This Court has jurisdiction over the action under 28 U.S.C. §§ 2201 and 2202

insofar as North River now seeks a declaration of its rights and obligations under the insurance

policy at issue. Pursuant to 28 U.S.C. § 1332, complete diversity exists between the parties, and

the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendants

are residents of this judicial district.

## III.
## THE UNDERLYING SUIT

11.      Halo and the Individual Defendants have been named as defendants in *Bruce

Berg, et al. v. Halo Companies, Inc., et al.*, Cause No. 11-15415, pending in the 191st District

Court for Dallas County, Texas (the "Underlying Suit"). Plaintiffs' First Amended Petition in the

Underlying Suit is attached as Exhibit A. The Underlying Suit alleges that, in late 2010, Halo

entered into a joint venture with certain third-parties to purchase, process, and monetize non-

performing residential mortgage notes on foreclosed single family homes. The plaintiffs in the

Underlying Suit are individuals and entities that allegedly provided $4,898,157.00 to Halo and its

partners, from December 2010 to August 2011, to be invested in the joint venture.

12.      In the Underlying Suit, the plaintiffs now complain that their money was not

invested in the joint venture as they had expected, and that Halo has refused to return the money.

The Underlying Suit asserts claims against Halo and the Individual Defendants for fraudulent

inducement, negligent misrepresentation, fraud, breach of fiduciary duty, negligence, breach of

contract, unjust enrichment, violations of the Texas Securities Act, civil conspiracy, and

exemplary damages, as well as claims for an injunction to preserve and protect the

$4,898,157.00, and a demand for an accounting of the funds. The plaintiffs seek to recover the

$4,898,157.00, along with reasonable costs, expenses, attorney's fees, and pre- and post-judgment interest.

13.     North River received Defendants' notice of the underlying claims on October 13, 2011, and North River agreed to indemnify Defendants, subject to a reservation of rights. That reservation was supplemented on December 27, 2011, and again on March 20, 2012.

## IV.
## THE NORTH RIVER POLICY

14.     North River issued Policy No. 556071453 to Halo Companies, Inc. (the "Policy"), effective November 1, 2010, to November 1, 2011, a copy of which is attached hereto as Exhibit B.

15.     The Insuring Agreement of the policy provides as follows:

**Section I.        INSURING AGREEMENTS**

Subject to the Limit of Liability shown in Item 3 of the Declarations, the *Insurer* shall pay on behalf of:

A.      an *Insured Person*, all *Loss* in excess of the applicable retention, for which such *Insured Person* becomes legally obligated to pay as a result of any *Claim* first made during the *Policy Period* or during the Extended Reporting Period, if exercised, except *Loss* for which the *Company* is required by law or is permitted to indemnify such *Insured Person*.

**B.**      the *Company*, all *Loss* in excess of the applicable retention, for which the *Company* is required by law or is permitted to indemnify an *Insured Person* and for which such *Insured Person* becomes legally obligated to pay as a result of any *Claim* first made during the *Policy Period* or during the Extended Reporting Period, if exercised.

**C.**      the *Company*, all *Loss* in excess of the applicable retention, for which the *Company* becomes legally obligated to pay as a result of any *Securities Claim* first made during the *Policy Period* or during the Extended Reporting Period, if exercised.

16.     Section III of the Policy contains the following relevant definitions:

*Claim* means a:
        1.      written demand for monetary damages or non-monetary relief;

2.  civil proceeding commenced by service of a complaint or similar pleading;
3.  criminal proceeding commenced by an indictment or similar charging document;
4.  formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order, or similar notice or order; or
5.   a **Securities Claim**;

including appeal therefrom, against an **Insured Person** for a **Wrongful Act**.

**Company** shall mean the entity designated in Item 1 of the Declarations [Halo Companies, Inc.], and any **Subsidiary**.

**Insured** means any **Insured Person**, except in respect to Insuring Agreement C where **Insured** shall mean solely the **Company**.

**Insured Person** means any past, present, or future duly elected or appointed director or officer of the **Company**, or any past, present, or future duly elected, appointed, or designated member of the Board of Managers or officers of a Limited Liability Company or with respect to a **Company** incorporated outside of the United States of America, their functional equivalent titles.

**Loss** means the amount that the **Insureds** are legally obligated to pay as the result of a **Claim**, including damages, judgments, settlements, pre- and post-judgment interest, and **Defense Costs**. However, **Loss** shall not include the following:

1.  fines or penalties, including but not limited to criminal or civil fines and civil money penalties;
2.  taxes;
3.  amounts not indemnified by the **Company** for which any **Insured Person** is absolved from payment by reason of any covenant, agreement, or court order;
4.  matters uninsurable under the law pursuant to which this policy is construed; or
5.  punitive or exemplary damages or the multiplied portion of any multiplied damages, except to the extent insurance for such damages is permitted by law and is not otherwise excluded by the provisions of this policy. For purposes of determining whether such damages are insurable, the law in the state of domicile or principal place of business of the **Company** or the **Insurer**, the state where the **Wrongful Act** took place, or the state where the damages are awarded or imposed, whichever is most favorable for the **Insured**, shall control any dispute between the **Insurer** and the **Insured**.

**Securities Claim** means a:

1.      written demand for monetary damages;

2.      civil proceeding commenced by service of a complaint or similar pleading; or

3.      criminal or administrative proceeding commenced by an indictment or similar charging document;

brought by a security holder of the **Company**, or the Securities and Exchange Commission against an **Insured** for a **Securities Wrongful Act**, except that a **Securities Claim** shall not include a **Claim** based upon, arising out of or directly or indirectly resulting from any dispute over the amount or value, directly or derivatively of any;

(a)     benefits, stock options or other compensation to any current, former or prospective director, officer or employee of the Company; or

(b)     consideration for any merger or acquisition.

**Securities Wrongful Act** means any actual or alleged error, omission, neglect, breach of duty, misstatement or misleading statement committed, attempted, or allegedly committed or attempted by an **Insured** with respect to the purchase or sale or offer to purchase or sell any securities issued by the **Company** including any actual or alleged violation of the Securities Act of 1933 as amended, the Securities Exchange Act of 1934 as amended, or any similar federal or state statute or any rules or regulations promulgated thereunder.

**Subsidiary** means any corporation or Limited Liability Company in which the **Company** directly or indirectly owns more than 50% and only while it owns more than 50% of the issued and outstanding voting securities or interest representing the right to select a majority of such entitys' [sic] directors, subject to **Section VI. General Conditions**, paragraph **E Treatment of Subsidiary**.

**Wrongful Act** means any **Securities Wrongful Act**, or any actual or alleged error, omission, neglect, breach of duty, misstatement or misleading statement committed, attempted, or allegedly committed or attempted by an **Insured Person** solely in their capacity as duly elected or appointed director or officer of the **Company**.

17.     Section IV of the Policy contains the following relevant exclusions:

The **Insurer** shall not be liable to make any payment for **Loss** resulting from any **Claim**:

1.      based upon, arising out of, or directly or indirectly resulting from any deliberate dishonest, fraudulent, or criminal act or omission, or any willful violation of any statute or regulation by any **Insured** if a judgment or other final adjudication establishes such dishonest, fraudulent, or criminal act or omission, or willful violation of any statute or regulation;

2.  based upon, arising out of, or directly or indirectly resulting from an *Insured* gaining in fact any advantage to which they were not legally entitled if a judgment or other adjudication establishes such;

(the "Fraud Exclusion" and the "Illegal Advantage Exclusion," respectively).

18.  Section VI of the policy includes the following provision, titled "Allocation of Loss":

In the event (a) *Loss* for which coverage is afforded by this policy may apply and (b) uninsured loss are both incurred, either because a *Claim* against the *Insured* includes both insured and uninsured matters or, because a *Claim* is made against both an *Insured* and others, the *Insured* and the *Insurer* agree to use their best efforts to determine a fair and proper allocation based upon the relative legal and financial exposures between insured *Loss* and uninsured loss. In the event that a determination as to the amount of *Defense Costs* to be advanced under this policy cannot be agreed to, then the *Insurer* shall advance such *Defense Costs* which the *Insurer* determines to be fair and proper until a different amount shall be agreed upon, or determined pursuant to the provisions of this policy and applicable law.

19.  Endorsement No. 6, titled "Amend Other Insurance Clause, Section VI, L," provides as follows:

L. Any *Loss* payable under this policy shall be excess of and shall not contribute [to] other *Loss* payable under any other valid and collectible insurance, whether such other insurance is stated to be primary excess, contingent or otherwise, unless such other insurance is specifically excess of this policy. This policy shall not be subject to the terms or conditions of any other insurance.

20.  Endorsement No. 8, titled "Major Shareholder Exclusion," provides as follows:

[The *Insurer* shall not be liable to make any payment for *Loss* resulting from any *Claim*] made against the *Insureds* brought by or on behalf of any person or entity whom, at the time such *Claim* is made, owns or controls 5% or more of the issued and voting power of the *Company*.

21.  Endorsement No. 10, titled "Specific Professional Liability Exclusion," provides as follows:

In consideration of the premium charged for this policy, it is hereby understood and agreed that the *Insurer* shall not be liable to make any payment for *Loss* in connection with any *Claim* made against the *Insureds* based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving

any negligent acts, errors or omissions in the performance of, or failure to perform any of the following professional services for others:

Mortgage Broker, Mortgage Banker
Credit Counseling, Credit Repair

22.     Endorsement No. 12, titled "Merger/Acquisition Exclusion," provides as follows:

In consideration of the premium charged, it is agreed that **Section IV. Exclusions**, paragraph **E. Exclusions Applicable to All Insuring Agreements** is amended to include the following:

> based upon, directly or indirectly arising out of, relating to, or in connection with the merger, acquisition, or divestiture of all or any part of the ***Company***, including but not limited to negotiation thereof, or failure to complete any such merger, acquisition, or divestiture.

## V.
## NO COVERAGE FOR THE UNDERLYING SUIT

A.     **No Coverage for Defendants' Failure to Perform Mortgage Banking, Mortgage Brokering, Credit Counseling, or Credit Repair Services**

23.     The plaintiffs in the Underlying Suit allege that Defendants entered into a joint venture set up to purchase, restructure and resell non-performing mortgages. These activities typically either are, or involve a mortgage broker, mortgage banking, credit counseling, or credit repair services. The underlying plaintiffs complain that the money they invested in the joint venture was never used to perform these services. The Policy at issue expressly excludes coverage for any "***Loss*** in connection with any ***Claim*** . . . in any way involving . . . [the] failure to perform" mortgage broker/banking or credit counseling/repair services. Because the heart of the underlying suit is that Halo failed to perform such services, the claims arising from the underlying suit are excluded from coverage.

B.     **No Coverage for Finding of Defendants' Fraudulent Activities and Willful Violation of the Texas Securities Act**

24.     The plaintiffs in the Underlying Suit allege that Halo and the Individual Defendants intentionally failed to invest the plaintiffs' money as Defendants had represented that

they would. Among other claims, the plaintiffs contend that Defendants' actions constitute fraud, fraudulent inducement, and a violation of section 581 of the Texas Securities Act. Section IV of the Policy contains the following exclusion:

> The **Insurer** shall not be liable to make any payment for **Loss** resulting from any **Claim**:
>
> 1.      based upon, arising out of, or directly or indirectly resulting from any deliberate dishonest, fraudulent, or criminal act or omission, or any willful violation of any statute or regulation by any **Insured** if a judgment or other final adjudication establishes such dishonest, fraudulent, or criminal act or omission, or willful violation of any statute or regulation;

Because the underlying suit is based upon Defendants' fraudulent actions, any "loss" resulting from the underlying suit is excluded from coverage under the Policy. Moreover, the underlying claim for violations of the Texas Securities Act is also expressly excluded.

**C.      No Coverage for Defendants' Illegally Gained Advantage**

25.      The underlying plaintiffs assert that they invested money with Halo and the Individual Defendants on the condition that it be used in the joint venture. The underlying plaintiffs complain, however, that Defendants have refused to return the money after it became clear that it would not be invested as intended. The Policy at issue excludes coverage for any claim "based upon, arising out of, or directly or indirectly resulting from [Defendants] gaining in fact any advantage to which they were not legally entitled." The underlying suit is based on, arises out of, and directly or indirectly results from Defendants acquisition of, and refusal to return, funds to which they are not legally entitled. For that reason there is no coverage under the Policy.

**D.      No Coverage for Loss Related to the Joint Venture**

26.      The core of the underlying suit concerns the concurrent formation and investment in the joint venture. The underlying plaintiffs allege that as part of the formation of the joint

venture, a partner of Defendants "acquired a  30% interest in Halo Companies." The Policy expressly excludes coverage for any claim "based upon, directly or indirectly arising out of, relating to, or in connection with the merger, acquisition, or divestiture of all or any part of" Halo Companies, Inc., or a subsidiary. At the very least, the underlying suit indirectly arises out the formation of the venture and the 30% acquisition of  Halo. Therefore, coverage for any loss resulting from the Underlying Suit is excluded.

**E.     No Coverage for Non-Monetary Relief and Exemplary Damages**

27.     The Underlying Suit seeks injunctive relief, a demand for an accounting of the allegedly invested funds, and punitive damages. The Policy provides coverage for a "***Loss***," which is defined as "the amount that the ***Insureds*** are legally obligated to pay as the result of a ***Claim***, including damages, judgments, settlements, pre- and post-judgment interest, and ***Defense Costs***." In addition, the Policy states that the definition of "'***Loss***' shall not include . . . punitive or exemplary damages."  By definition, the underlying plaintiffs' request for an injunction and accounting will not result in an "amount" that Defendants are "legally obligated to pay." Further, the Policy expressly excludes the underlying request for punitive damages. As a result, North River has no duty to indemnify Defendants on these claims.

**F.     No Coverage for Claims by Shareholders**

28.     The Policy excludes coverage for any claim "made against the ***Insureds*** brought by or on behalf of any person or entity whom, at the time such ***Claim*** is made, owns or controls 5% or more of the issued and voting power of" Halo Companies, Inc., or one of its "subsidiaries." The nature of the underlying plaintiffs' "investment" with Halo is somewhat vague. It appears, however, that by investing in the joint venture, the underlying plaintiffs likely constitute shareholders in a subsidiary of Halo. If that is the case, any claims by the underlying plaintiffs are excluded from coverage under the Policy.

## VI.
## REQUEST FOR DECLARATORY RELIEF

29.     North River repeats and incorporates by reference Paragraphs 1 through 28, as though set forth fully herein.

30.     North River seeks a declaration from this Court that it has no duty to indemnify Halo or the Individual Defendants because the claims in the Underlying Suit are not covered by the Policy.

31.     More specifically, North River seeks a declaration that there is no duty to indemnify Halo or the Individual Defendants to the extent that the Underlying Suit:

a.      is excluded from coverage under the Policy's Specific Professional Liability Exclusion;

b.      is excluded from coverage under the Policy's Fraud Exclusion;

c.      is excluded from coverage under the Policy's Illegal Advantage Exclusion;

d.      is excluded from coverage under the Policy's Merger/Acquisition Exclusion;

e.      seeks equitable, injunctive, punitive, or other relief that does not constitute a "Loss" under the Policy;

f.      is excluded from coverage under the Policy's Major Shareholder Exclusion; and

g.      does not involve a "Claim" against an "Insured Person" for a "Wrongful Act" as required by the insuring agreements to the Policy.

32.     North River seeks a further declaration that, under the Policy's "Other Insurance" provision, the Policy is excess to any other insurance under which Halo or the Individual Defendants are able to seek coverage for the Underlying Suit.

## VII.
## JURY DEMAND

33.     Plaintiff hereby demands a jury trial.

**VIII.**
**<u>PRAYER</u>**

WHEREFORE, Defendant The North River Insurance Company prays that the Court:

1.      Issue a declaration that North River has no obligation under the Policy to indemnify Halo or the Individual Defendants for any of the claims brought in the Underlying Suit; and

2.      Award Plaintiff all other relief to which it may be entitled, including, but not limited to its attorney fees, costs, and expenses.


Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.


By :_____/s/ Brian S. Martin_____
          BRIAN S. MARTIN
          bmartin@thompsoncoe.com
          State Bar No.  13055350
          JAMIE R. CARSEY
          jcarsey@thompsoncoe.com
          State Bar No.  24045620
          One Riverway, Suite 1600
          Houston, Texas 77056
          Telephone:  (713) 403-8210
          Telecopy:  (713) 403-8299